UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SPENCER ACKERMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>  Defendant. | Civil Action No. 24- 2858 (TNM) |

**DEFENDANT'S MOTION TO MODIFY THE COURT'S
FEBRUARY 13, 2025, ORDER AND MEMORANDUM IN SUPPORT THEREOF**

Defendant, the Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, respectfully moves to modify the Court's February 13, 2025, Minute Order, which orders "defendant [to] make its first production of 250 pages no later than the end of this month." *Id*. Specifically, the FBI seeks to modify the Order to allow the FBI to process at a rate of 250 pages per month and make its first production no later than March 31, 2025. The undersigned has conferred with Plaintiff's counsel pursuant to Local Civil Rule 7(m) and Plaintiff opposes the relief requested.

**BACKGROUND**

Plaintiff filed its complaint on October 11, 2024, ECF No. 1, regarding its May 20, 2024, Freedom of Information Act ("FOIA") requests made to the Federal Bureau of Investigation. *See id*. ¶ 8. Following Defendant's filing of its Answer (ECF No. 9), the Parties filed a joint status report on January 17, 2025 (ECF No. 10). The Court ordered an initial status conference on February 12, 2025. *See* Jan. 21, 2025, Order. At the status conference, Defendant communicated that the FBI had scoped Plaintiff's FOIA request, estimated that there were approximately 5,000 pages potentially responsive to Plaintiff's FOIA request, and that the FBI recently had set a

processing rate of 250 pages per month in order to reduce its FOIA backlog to September 2018 levels no later than December 15, 2025. On February 13, 2025, the Court issued an order which requires the "defendant [to] make its first production of 250 pages no later than the end of [February]." Feb. 13, 2025, Order. The Court further ordered the Defendant to "continue producing at a rate of 250 pages per month until production is complete." *Id*.

## LEGAL STANDARD

"Courts have broad discretion to determine a reasonable processing rate for a FOIA request." *Colbert v. FBI*, Civ. A. No. 16-1790, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (collecting cases). As this Court has recognized, while courts in this District have exercised that discretion in different ways depending on the facts and procedural posture of each case, "they have largely coalesced around the proper considerations that inform a reasonableness determination." *Harrington v. Food & Drug Admin.*, 581 F. Supp. 3d 145, 150 (D.D.C. 2022).

As to the reasonableness inquiry, there are several factors pertinent to the inquiry, including (1) the size and compelling need of the request compared to others, as well as (2) the effect on the Agency's ability to review other FOIA requests. *Id*. Other courts in this District have also considered the effect of other FOIA requests when analyzing the burden, including the volume of requests an agency faces, how much requests to the agency have increased in recent years, the resources and capacity of the agency, other FOIA litigation in which the agency is involved, the agency's release policies, and how ordering swifter production would affect other FOIA requesters patiently waiting their turn without resorting to litigation. *Id*. (citing *Middle E. F. v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185-86 (D.D.C. 2018); *Colbert*, 2018 WL 6299966, at *3; *Energy Future Coal. v. Off. of Mgmt. & Budget*, 200 F. Supp. 3d 154, 161 (D.D.C. 2016); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014)). While "a court . . . my

use its equitable powers to require the agency to process documents according to a court-imposed deadline," *Clemente v. FBI*, 71 F. Supp. 2d 262, 269 (D.D.C. 2014), a plaintiff is required to show that it is entitled to expedited processing under FOIA or its implementing regulations. *See Middle E. F.*, 297 F. Supp. 3d at 186. Expedited processing is available when a requester establishes: "(1) an imminent threat to the life or physical safety of an individual, (2) an 'urgency to inform the public about an actual or alleged federal government activity,' (3) a threatened loss of substantial due process rights, or (4) '[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." *Id*. (quoting 6 C.F.R. § 5.5(e)(1)).

**ARGUMENT**

Defendant respectfully requests to modify the Court's February 13, 2025, Order, to allow the FBI to (1) process at a rate of 250 pages per month (as opposed to produce at a rate of 250 pages per month) and (2) to process 250 pages per month and make its first production no later than March 31, 2025. There is good cause for the requested relief because courts within this District typically have utilized the standard of "processing" a certain number of pages of FOIA records (as opposed to producing a set number of pages per month). Further, the FBI is unable to make its first production by the end of February 2025 due to its existing workload that has been recently exacerbated by an Executive Order requiring the FBI to declassify certain files the FBI maintains. *See* Michael G. Seidel Decl. ("Seidel Decl.") (attached); *see also SafeCard Servs., Inc., SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims.").

Allowing the FBI to process 250 pages per month and make its first production by the end of March 2025 is a reasonable request given the FBI's current FOIA workload (both in litigation

and not in litigation) which is described in the Parties' January 17, 2025, Joint Status Report (ECF No. 10). In the Parties' Joint Status Report (*see id.*) and as described by the undersigned at the February 12, 2025, scheduling conference, the FBI has a current standard policy of processing 250 pages per month due to the fact that the FBI has one of the largest and most complex FOIA programs in the federal government, in which it reviews approximately one million pages annually for dissemination to the public. Further, the FBI recently was directed to reduce its FOIA backlog to September 2018 levels no later than December 15, 2025, and, as part of that directive, reevaluated its business practices, to include its long-standing processing rate of 500 pages per month with the goal of reducing the FBI's current backlog. As a result, on July 1, 2024, the FBI revised its policy from 500 to 250-page increments processed per month per request—including requests in litigation—to equitably distribute its limited resources to as many requesters as possible.

There is a significant difference between the processing rate of 250 pages per month sought herein, as opposed to producing 250 pages per month. To produce that many pages, the FBI typically will need to review far more pages, as some pages often will need to be withheld in full, and thus to satisfy an order requiring production of a specific number of pages monthly, the FBI will need to process an indeterminate number of pages. *See* Seidel Decl. ¶ 17. This dilemma makes it very difficult for the FBI to plan for the scope of resources that will need to be allocated to this particular matter and to balance those resources against all of the FBI's other FOIA processing responsibilities. By contrast, an order requiring the processing of a defined number of pages should allow the FBI to reliably meet its obligations in this case and to balance the workload for this case with the work it is performing simultaneously on countless other requests. That is, when an agency commits to a processing rate of a certain number of pages per month, that approach

provides an agency the definitiveness needed to meet commitments for each discrete request, whether it is in litigation or not. *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) (to ensure fairness amongst requesters, courts should not enable plaintiffs to "gain[] access to Government records ahead of prior applicants for information" unless "a genuine need and reason for urgency" is shown by the plaintiff). Because of these distinctions, FOIA response rates usually involve a certain number of pages processed, not pages produced, and the pages processed approach should likewise be used in this matter.

While the FBI understands requesters' desires for faster responses, Defendant has a public obligation to ensure that exempt information is protected if reasonably foreseeable harm would result from its release. *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) ("FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.' So, just as we cannot properly expand Exemption 4 beyond what its terms permit, we cannot arbitrarily constrict it either by adding limitations found nowhere in its terms." (citations omitted)). Similarly, the FBI has an obligation to other requesters to ensure that all requesters are treated equitably, which is accomplished by the agency devoting its resources across the broad range of requesters who are in the queue, all of whom are awaiting responses to their FOIA requests and is not giving the requests at issue here preferential treatment simply because Plaintiff elected to bring this lawsuit. *See Open Am.*, 547 F.2d at 615 ("Congress intended to guarantee access to Government agency documents on an equal and fair basis").

Moreover, although the FBI is diligently taking all the steps necessary to comply with Plaintiff's FOIA requests (which consist of 9 requests) while also handling thousands of other pending FOIA requests, as well as a high number of FOIA matters in litigation (currently

consisting of 480 FOIA cases), the FBI is also currently working to comply with the Executive Order issued by President Donald Trump on January 23, 2025, ordering declassification of John F. Kennedy, Robert F. Kennedy, and Martin Luther King assassination records. *See* Seidel Decl. ¶ 14. The undersigned was not aware of this information to share with the Court at the most recent status conference on February 12, 2025.

The FBI has completed most of the initial steps involved in processing Plaintiff's requests, including searching for, collecting, and importing the records into its FOIA document processing system to initiate the FOIA redaction process. *Id*. ¶ 15. Given the nature of the responsive records at issue here, which involve national security related matters, however, most of these records must undergo a classification review. *Id*. This review is necessary to ensure identification and proper marking of classified information and to ensure that information that is no longer classified is declassified. *Id*. Additionally, once the classification review is complete, these records will also undergo a line-by-line review by a FOIA analyst who will apply redactions as appropriate to information that is exempt under the FOIA. *Id*. The FOIA analyst must also conduct consultations with other government agencies where another agency's information is found within the records. *Id*. Once the classification and FOIA reviews are complete, a review by both classification and FOIA supervisory personnel is conducted to ensure accuracy of the FOIA processing. *Id*. Once these supervisory reviews are complete, and prior to disclosure of any non-exempt information, the processed records must be sent to subject matter experts to ensure that no harm to FBI operations would occur based on the proposed disclosure determinations. *Id*. Next, required security protocols are run to move releasable records from the FBI's Secret enclave—where FOIPA processing occurs—to the unclassified enclave for public release. *Id*. While the FBI is mindful of the Court's desire to ensure timely processing, the FBI's current workload, including

FOIA processing and the recent Executive Order with which the FBI needs to comply, in addition to the nature of Plaintiff's request, are all factors that militate in favor of allowing the FBI additional time to process 250 pages on a monthly basis, consistent with its current backload that is aimed to reduce the FBI's existing FOIA backloads, and make its first production of responsive, non-exempt documents by March 31, 2025.

Finally, as the Court recognized in the February 12, 2025, status conference, Plaintiff has not shown that Defendant can or should process documents at a rate faster than its 250 per month policy. *See Middle E. F.*, 297 F. Supp. 3d at 186. More specifically, Plaintiff has not shown that there is an imminent threat to the life or physical or safety of an individual, an urgency to inform the public about an actual or alleged federal government activity, a threatened loss of due process rights, or a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. *See id*. Rather, in his FOIA request as part of his application for waiver or limitation of fees, Plaintiff has merely suggested that "the disclosure of the requested records . . . is likely to contribute significantly to public understanding of operations and activities of the government [and] new insight into the FBI's efforts to 'protect the American people and uphold the Constitution of the United States.'" Compl., Ex. 1, FOIA Req. (ECF No. 1-1). This is not enough to make a showing that expedited processing is warranted. On these bases, the Court should find that the Defendant's standard processing rate of 250 pages per month is reasonable and allow Defendant to make its first production of responsive, non-exempt documents on or before March 31, 2025.

\* \* \*

## CONCLUSION

For these reasons, Defendant respectfully requests the Court modify its February 13, 2025, Order by allowing the FBI to process Plaintiff's FOIA request at the rate of 250 pages per month and make its first production of responsive, non-exempt documents by March 31, 2025.

Dated: February 21, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  */s/ Dedra S. Curteman*
DEDRA S. CURTEMAN,
  D.C. Bar #90021492
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2550

*Attorneys for the United States of America*