UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SPENCER ACKERMAN,

    Plaintiff,

    v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action No. 24-cv-2858

# DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

    1.    I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA), from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General

Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

2. In my official capacity as Section Chief of RIDS, I supervise approximately 221 FBI employees, supported by approximately 9 contractors, who staff a total of eight (8) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation.

4. The FBI submits this declaration in support of Defendant's Motion for Clarification and Reconsideration. Part I of this declaration provides the Court with a summary of the administrative history of Plaintiff's nine FOIA requests; part II explains the volume of records potentially responsive to Plaintiff's requests seeking a variety of records about Ali Khan, Majid Khan, and records related to previous FOIA releases about both subjects; and part III

provides a description of the FBI's FOIPA program, which handles tens of thousands of FOIPA requests for millions of pages of sensitive national security and law enforcement records annually.

## PART I: ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

5. On May 20, 2024, Plaintiff submitted nine (9) FOIA requests to the FBI through the FBI's eFOIA system.[1] Each of these requests sought different categories of records about three (3) individuals: Ali Khan, Mahmood Khan, and Majid Khan. Plaintiff submitted certification of identity forms (DOJ 360) executed by Khan Shoukat Ali and Majid Shoukat authorizing the FBI to release their information to the Plaintiff. For ease of handling and efficiency, the FBI consolidated the nine FOIA requests into three administrative FOIA request numbers in its FOIA Document Processing System. A brief description and breakdown of each FOIA is provided below.

| FOIA Request No. | Ackerman FOIA Request Number and Exhibit | Overall Subject of Request | Specific Topic |
|---|---|---|---|
| 1636250-0 | 1 (Ex. A.) | Ali Khan | All records from the years 2003 and 2004 related to wiretaps, pen registers, national security letter data collections, and any other electronic surveillance activities targeting or involving Mr. Ali Khan[...]. |
| | 3 (Ex. B.) | | All investigative records related to an interview of Ali Khan conducted by FBI personnel on or around March 5, 2003. |
| | 4 (Ex. C.) | | All investigative records related to an interview of Mahmood Khan, son of Ali Khan and brother of Majid Khan, conducted by FBI personnel in or around March or April 2003. |

---

[1] An eFOIA is an electronic means by which requesters can submit FOIA requests to the FBI, online, through the FBI's public website, www.FBI.gov.

| | | | |
|---|---|---|---|
| | 5 (Ex. D.) | | All records related to human and all other non-electronic surveillance and investigative activities targeting Ali Khan[...]. |
| | 6 (Ex. E.) | | All records related to human and all other non-electronic surveillance and investigative activities targeting Ali Khan in reference to Iyman Faris[...]. |
| | 8 (Ex. F.) | | All records that have been that have been previously indexed or "tagged" in the FBI's filing systems (such as in the Electronic Case File (ECF) system or Universal Index) as associated with Mr. Ali Khan[...]. |
| 1636292-0 | 2 (Ex. G.) | Majid Khan | All records from the years 2003 and 2004 related to wiretaps, pen registers, national security letter data collections and any other electronic surveillance activities targeting or involving Mr. Majid Khan[...]. |
| | 4 (Ex. H.) | | All investigative records related to an interview of Mahmood Khan, son of Ali Khan and brother of Majid Khan, conducted by FBI personnel in or around March or April 2003. |
| | 9 (Ex. I.) | | All records that have been that have been previously indexed or "tagged" in the FBI's filing systems (such as in the Electronic Case File (ECF) system or Universal Index) as associated with Mr. Majid Khan[...]. |
| 1636477-0 | 7 (Ex. J.) | Khan, Majid et. al. (Previous FOIA Releases) | All final processed FOIA releases by the FBI for previous requests for records to the FBI related to Majid Khan, including but not limited to the following: request number 2013-01746, dated 1/7/14; and request number 1511489, dated 12/7/21. |

6. The FBI sent Plaintiff a letter for each consolidated request number and advised Plaintiff that because portions of his requests about living individuals cannot be sent through the eFOIA system, future correspondence would be delivered by mail; that his request for a public interest fee waiver was being considered and that he was being categorized as a general requester

for fee purposes and if the fee waiver was denied he would be charged search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

7. The FBI also advised Plaintiff that as to his fourth request concerning a third party, the FBI could neither confirm nor deny the existence of records concerning those individuals pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C), because the mere acknowledgment of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy.

8. By letter dated May 30, 2024, the FBI advised Plaintiff it was denying his request for expedited processing as he failed to provide enough information concerning the statutory requirements. **(Ex. K.)**

9. In each of its letters, the FBI informed Plaintiff he could check the status of his FOIA request at www.Vault.fbi.gov and that if he was dissatisfied with the FBI's determination, he could administratively appeal by writing to the Director, Office of Information Policy (OIP) within nine (90) days, and that he could seek dispute resolution services by emailing the FBI's FOIA Public Liaison; and he could contact the Office of Government Information Services (OGIS).

10. Plaintiff filed a Complaint in the United States District Court on October 11, 2024. (ECF No. 1.)

11. By letter dated January 17, 2025, the FBI provided Plaintiff with a summary of this information. **(Ex. L.)**

5

## PART II: VOLUME OF POTENTIALLY RESPONSIVE RECORDS

12.     The FBI conducted a search of its Central Record System[2] for records responsive to Plaintiff's requests and located approximately five thousand pages of potentially responsive records across two (2) files. The FBI is currently completing the collection of these records for importation into its FOIA Document Processing System so that the records may be processed under the FOIA.

## PART III: FBI'S FOIA FOIPA PROGRAM

13.     The FBI currently employs 221 Government Information Specialists ("GISs"), with support from 91 contractors to process requests for FBI information under the FOIA and Privacy Acts and conduct classification and declassification reviews, *inter alia*. These employees process thousands of FOIA requests received by the FBI every year. RIDS staff are assigned to the following units:

    (a)     RIDS Front Office;

    (b)     the Initial Processing and Operations Unit ("IPOU"), which receives and opens new FOIPA requests, initiates searches for records responsive to FOIPA requests, makes responsiveness determinations, and ensures that responsive material is scanned and imported into the FBI's FOIA Document Processing System;

---

[2] The FBI's CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices worldwide. The FBI's CRS is the FBI system of records where responsive records would reasonably be expected to be found.

(c) the National Security and Classification Operations Unit ("NSCOU"), which provides expert guidance and direction regarding FOIPA requests pertaining to national security matters, develops and manages responses to requests for access to sensitive national security information in FBI records; and reviews and makes national security classification determinations pursuant to Executive Order 13526 in response to a variety of requests, and also conduct mandatory and systematic declassification reviews;

(d) FOIA/Privacy Act ("FOIPA") Units, which process requests for records under the FOIA and Privacy Act;

(e) the FOIA Support Unit ("FSU"), which serves as RIDS's Public Information Office and provides administrative assistance and support to the other RIDS units;

(f) the Litigation Support Unit ("LSU"), which assists the FBI Office of General Counsel's FOIA Litigation Unit in handling all FOIPA lawsuits against the FBI or involving FBI records and information by reviewing, researching, and justifying the FBI's response to FOIPA requests, and preparing detailed declarations to support motions for summary judgment. The FBI is currently dealing with a heavy litigation backlog (480 FOIA litigations);

14. The FBI has been diligently conducting all the steps necessary to comply with Plaintiff's requests while also handling thousands of other FOIPA requests, a high number of FOIA litigations (480), and is currently working to comply with the Executive Order issued by President Donald Trump on January 23, 2025 ordering declassification of John F. Kennedy, Robert F. Kennedy, and Martin Luther King assassination records.[3]

---

[3] The FOIA as implemented in the Department of Justice by 28 C.F.R. § 16.5(b) encourages components to develop multi-track processing with the goal of responding to more requests. Consistent with this sound business practice and the program goal stated above, effective April 2024, the FBI restructured its processing tracks or "queues" by adding the extra-small queue to its existing four processing queues as the majority of requests program-wide range from 1 to 250

15. The FBI has completed most of the initial steps involved in processing Plaintiff's requests, including searching for, collecting, and importing the records into its FOIA Document Processing System to initiate the FOIA redaction process. However, given the nature of the responsive records at issue here which involve national security related matters, most of these records must undergo a classification review by the NSCOU. This review is necessary to ensure identification and proper marking of classified information and to ensure that information that is no longer classified is declassified. Additionally, once the classification review by the NSCOU is complete, these records will also undergo a line-by-line review by a FOIA analyst who will apply redactions to information exempt under the FOIA. The FOIA analyst must also conduct consultations with other government agencies where another agency's information is found within the records. Once the classification and FOIA reviews are complete, a review by both classification and FOIA supervisory personnel, is conducted to ensure accuracy of FOIA processing. Once these supervisory reviews are complete, and prior to disclosure of any non-exempt information, the processed records must be sent to subject matter experts to ensure that no harm to FBI operations would occur based on the proposed disclosure determinations. Next, required security protocols are run to move releasable records from the FBI's Secret enclave—where FOIPA processing occurs—to the unclassified enclave for public release. Thereafter, monthly processing continues for the next 250 pages until all responsive pages to the request are released.

---

pages. As such, the additional processing queue allows for timely and efficiently closure of many requests with lower page counts. The FBI now has five processing queues – extra-small queue (1-50 pages), small queue (51-250 pages), medium queue (251-500 pages), large queue (501-4,999 pages), and extra-large queue (more than 5,000 pages). Within each queue, as noted above, requests are processed in FIFO order.

16. The FBI has determined that reviewing 250-pages per month is "the right size" increment to ensure a timely, consistent workflow. In this regard, maintaining a steady interim release posture is key to maximizing the release of FBI information to the most requesters in the FBI's high-volume, complex request environment. As such, processing at higher monthly rates of production delays the processing of requests for other requesters, including requests that predate Plaintiff's requests. The FBI conducts the processing and reviews of records at 250 reviewed pages per month, but at the beginning of this process there is a necessary "start-up" period required to import the first set of records into the workflow and push those records through the full process. Once a set of 250 pages have moved out of classification review and are sent to a FOIA analyst to conduct a review under FOIA, another 250-page increment has already been imported and sent for classification review, ensuring a continuous flow of information to requesters. As these 250-page increments move through the process, there is no accurate way to predict if all 250 pages will be released to the requester, just that they will be processed and reviewed.

17. For these reasons explained above, the FBI is seeking a clarification and reconsideration of the Court's February 13, 2025, Order asking the FBI to make its "first production of 250 pages" no later than the end of February and to continue processing at a rate of 250 pages per month until production is complete. There is a significant difference between the processing rate of 250 pages per month sought herein, as opposed to producing 250 pages per month. To produce that many pages, the FBI typically will need to review far more pages, many times hundreds and even thousands more, as many pages are often duplicates or out of scope, or need to be withheld in full, and thus to satisfy an order requiring production of a specific number of pages monthly, the FBI will need to process an indeterminate number of pages. The FBI

appreciates the Court's agreement with the processing rate requested by the FBI; however, the FBI is seeking reconsideration and clarification as to two issues. First, based on the FBI's practice of processing records in 250-page increments, it cannot predict that all 250 pages reviewed for the month will be produced as some pages may be withheld in full as exempt pursuant to applicable FOIA exemptions. Second, despite its best effort, the FBI needs additional "start-up" time to import the first increment of 250 pages into its processing system to begin the multi-faceted system of reviews based on monthly increments of 250 pages. The FBI respectfully asks the Court to extend the initial release date to March 30, 2025, continuing each month thereafter at a rate of 250 pages reviewed each month.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through L, attached hereto, are true and correct copies.

Executed this 21ST day of February 2025.

_____
MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia