UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SPENCER ACKERMAN,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Civil Action No. 24- 2858 (TNM) |

**JOINT STATUS REPORT**

Pursuant to the Court's February 13, 2025, Minute Order, Plaintiff, Spencer Ackerman, and Defendant, the Federal Bureau of Investigation (collectively, "the Parties"), by and through undersigned counsel, respectfully submit the following joint status report.[1]

Plaintiff filed its complaint on October 11, 2024, ECF No. 1, regarding its May 20, 2024, Freedom of Information Act ("FOIA") requests made to the Federal Bureau of Investigation. *See id.* ¶ 8.

Consistent with the Court's March 4, 2025, Minute Order, Defendant has completed its search, located 44,947 pages of potentially responsive material, with an additional 2 days, 15 hours and 21 minutes of audio/video media. Defendant is working to process 250 pages and make its first interim monthly production on or before March 31, 2025.

**Defendant's Position:**

---

[1] Defendant intends to file a supplemental joint status report on Monday, March 17, 2025, to address Plaintiff's identified issues, including Plaintiff's most recent March 7, 2025, "narrowing" proposal, and whether Defendant can apply Plaintiff's proposed categories for narrowing. Due to the unexpected illness of Agency counsel and her unavailability on Friday, March 14, 2025, the undersigned AUSA was unable to determine next steps as to that aspect of Plaintiff's identified issues.

On December 20, 2024, Plaintiff inquired with Defendant via counsel as to whether Defendant would be open to input on narrowing or prioritizing its collection of records. On January 10, 2025, Plaintiff sent Defendant a request to prioritize certain information requested within his FOIA request and asked the FBI to describe its initial search. At that point, because Defendant had not yet finalized its search, Defendant declined to provide a number of potentially responsive pages. On March 5, 2025, the Defendant advised Plaintiff that it would not be able to accommodate a request for prioritizing the processing of documents in any particular order, because doing so requires more effort than simply processing the documents. Specifically, the FBI would need to manually review all of the documents collected, locate the ones Plaintiff lists in order, and then work to keep track of what has and has not been processed, all of which is a manual process that requires significantly more effort than simply processing all of the documents in order that they're scanned into our processing system.

On March 7, 2025, Plaintiff sent another inquiry about Defendant's search, a set of questions for Defendant to answer, and made a proposal to narrow his search. Defendant declined to provide Plaintiff with the requested description of the search at this juncture in the litigation because it is premature—while the initial search is complete, addressing issues related to the adequacy of the FBI's search is more appropriately handled after processing and once the Plaintiff has had a chance to review the agency's productions. Further, providing this information would require a significant amount of effort, and would divert resources from the FBI's processing efforts. In FOIA cases, the agency is typically allowed to complete its search and production decisions. Then, if a plaintiff challenges the agency's searches and withholdings, the agency submits a *Vaughn* index along with detailed affidavits—in support of its search and withholding determinations. *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir.

1973). Defendant will agree, however, to provide a draft description of the search at the conclusion of the productions so that Plaintiff has an opportunity to make any objections before the Parties' submission of briefing regarding the search. As to Plaintiff's request for further information, Defendant is reviewing the information and will attempt to provide answers to Plaintiff's questions before the next joint status report.

**Plaintiff's Position:**

On December 16, 2024, this Court ordered Defendant to report the "anticipated number of documents responsive to Plaintiff's FOIA request[s]" by January 17, 2025. Yet Defendant has so far only provided inconsistent and skyrocketing reports on the number of records it has collected that are "potentially responsive" and therefore subject to reduction during subsequent processing by hundreds and even thousands of pages of non-responsive or duplicate records, according to Defendant's own Declaration. See Seidel Declaration, ECF #11. An adequate response to the court's previous order will greatly assist the parties in resolving this case, and may help the court to manage it. Meanwhile, Defendant informed Plaintiff for the first time on March 13, 2025, that it had collected far more than the 5,000 pages of potentially responsive records it reported in February, and now has a collection of nearly 45,000 pages and several days of recordings. As a result, under the current production schedule, the FBI's productions will be completed on February 29, 2040.

As outlined above, Plaintiff has repeatedly attempted in good faith to engage in conference with Defendant including by sending multiple detailed proposals for a mutual narrowing agreement, sending unilateral directions to voluntarily remove certain collected records, and sending questions about the search and collection undertaken by the FBI. Plaintiff communicated these attempts to engage in conference through counsel on December 20, 2024,

January 10, 2025, February 19, 2025, and March 7, 2025. Plaintiff has expressed the desire to remove large portions of the collected records, stating his interest in reducing the collection—and with it both FBI's burden and his own expected time waiting for completion of production—by as much as 90 percent (of the 5,000 pages of collected records initially reported by Defendant).

Additionally, Plaintiff has expressed the desire to prioritize processing of easily identifiable portions of Defendant's collection, such as by certain of the key words used by the FBI, or by the particular FOIA request to which the FBI believes they are potentially responsive, or even by file type. Doing so is common practice in FOIA cases because such prioritization of easily identifiable categories increases the likelihood that a requestor will determine after receiving his prioritized records, that the records remaining to be processed are not wanted and he can voluntarily forgo receiving additional records. Plaintiff strongly believes that to be the case here given the large volume of records collected. Plaintiff originally submitted separate FOIA requests for distinct categories of records with the understanding that by doing so he could then monitor the progress on the FBI's responses to each request. The FBI administratively combined Plaintiff's nine request into three "cases" for its convenience, but the FBI has not even honored its own decision by identifying the volume of the collections responding to each case. The FBI's capabilities to identify the classes of records collected are at least the same capabilities it used to collect the records in this and every FOIA case.

Plaintiff has so far received no substantive response from Defendant to any of these inquiries except a statement without further elaboration on March 5, 2025 that "we are unable to prioritize any processing." In any event, the FBI has not even disclosed in what order the records in its collection are to be processed.

In the interest of narrowing the records at issue, Plaintiff continues to seek basic information about the records that the Defendant has collected. In light of the Defendant's disclosure for the first time in this report that its collection has expanded nearly 900 percent from approximately 5,000 pages on February 13, 2025, to nearly 45,000 pages now, Defendant should provide some explanation to the Court and Plaintiff as to why its previous estimate, which the Court requested in view of setting the production schedule, was so drastically inadequate. In light of the revelation that the collection now includes audio/visual media, Plaintiff intends to inquire whether those types of records are the only ones that Defendant has the capability to identify specifically within its collection.

With the production schedule fully aligned with all of the Defendant's preferences and (at the time) expected to proceed apace for 20 months (now expanded to 15 years), Plaintiff's March 7, 2025, inquiry renewed his previous requests for information about the search and collection of records, including (1) the FBI's capabilities to sort its record collection to eliminate duplicates, email chains, and record types, (2) quantities of certain types of records, (3) quantities of pages of records collected for each of Plaintiff's FOIA requests, and (4) whether the FBI has already removed duplicates and other designated records as Plaintiff previously requested more than two months ago. Plaintiff received no acknowledgement of receipt of his March 7 message from Defendant counsel except for a mention of it in Defendant's initial draft of this report.

So far, Defendant has yet to express any interest in narrowing the scope of this case, even though doing so would serve the interests of conserving government resources, managing this litigation to closure, and delivering Defendant's obligations to the Plaintiff under the FOIA. Disclosure of the search terms and methods used would allow Plaintiff to consider voluntarily forgoing terms or clarifying his request. Any burden encountered by Defendant in providing

basic information about its recently-completed search likely will be far exceeded by the potential savings of some portion of the 15 years of continuous effort expected by narrowing the scope of records to be processed. Defendant's declaration in this case in support of its preferred processing method consisted of 11 pages of fine details on the intricate steps the FBI intends to take to process the requested records. See Seidel Declaration, ECF #11. Plaintiff has difficulty understanding Defendant's steadfast reluctance to provide via counsel, a comparatively brief, potentially single-page list of search terms and systems or places searched with the corresponding quantities of records that were returned. Plaintiff's counsel is well familiar with the potential benefit of this practice, having in that past provided such information to Plaintiffs as agency counsel on behalf of a federal agency in multiple FOIA cases, each time in concert with Justice Department counsel.

Finally, if the Defendant is allowed its preference to report the methods used in its search only after the collected records are processed over the course of 180 monthly productions, in the year 2040, the Defendant agency will then face a substantially greater burden of looking backward fifteen years and recollecting the search information that it currently has much more readily available. Further, if Defendant cannot trace the records in its collection to the terms that were used and thus provide corresponding page counts at this time, it will not be able to adequately explain or defend its search methods when the time eventually comes to do so in this case.

In light of these facts, Plaintiff respectfully requests that this Court order the Defendant to provide Plaintiff with a draft description of the search that it has conducted for his FOIA requests, including the search terms used and the places or systems searched. Additionally, as previously requested in Plaintiff's Position in the parties' Joint Status Report in January (See

ECF #10), Plaintiff's respectfully requests that the Court order Defendant to immediately provide an estimated volume of responsive records in this case, to include a breakdown of the number of pages collected as a result of each of the search terms or collection methods the Defendant used to gather the responsive records for each of Plaintiff's FOIA requests. Lastly, Plaintiff requests that this Court order Defendant to provide Plaintiff with answers to his previously-submitted questions regarding the collected records, as well as an explanation of the order records are being processed, if any, and the reason the collection expanded unexpectedly, to the extent reasonably practicable, before March 31, 2025, so that the parties can be better positioned to meet and confer to narrow and prioritize the FBI's collection of records and bring this case to a resolution some time before the year 2040.

    As such, the Parties will submit another Joint Status Report updating the Court as to their progress consistent with the Court's February 13, 2025, Minute Order, on or before April 14, 2025.

*     *     *

Dated: March 14, 2025                    Respectfully submitted,

*/s/ Kerry S. Gutknecht*
Kerry Gutknecht, D.C. Bar #1657705
1319 F St. NW Ste. 301
PMB 154
Washington, D.C. 20004
(202) 798-1650
Kerry@GutknechtLegal.com

*Counsel for Plaintiff*

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By:  */s/ Dedra S. Curteman*
DEDRA S. CURTEMAN, D.C. Bar # 90021492
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-2550
dedra.curteman@usdoj.gov

*Counsel for the United States of America*

- 8 -