UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SPENCER ACKERMAN,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendant. | Civil Action No. 24-2858 (TNM) |

**JOINT STATUS REPORT**

Pursuant to the Court's July 7, 2025, Minute Order, Plaintiff, Spencer Ackerman, and Defendant, the Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, respectfully submit the following joint status report ("JSR").

Plaintiff filed his complaint on October 11, 2024, ECF No. 1, regarding multiple May 20, 2024, Freedom of Information Act ("FOIA") requests made to the FBI for records related to the FBI's investigations of Ali Khan and Majid Khan, who are two individuals the FBI investigated in connection with the attacks on the United States on September 11, 2001. *See* Compl. ¶¶ 1, 8.

**Expedited Processing.**

Plaintiff recently attempted to informally renew his request for expedited processing of his FOIA requests—a request for expedited processing made during the pendency of this litigation. This recent request for expedited processing has not been sent directly to the FBI's Information Management Division by Plaintiff, but only raised in 1) a June 10 email from Plaintiff's counsel to the undersigned's predecessor Defendant's counsel in this case, 2) the July 3, 2025, JSR in Plaintiff's position statement (*see* ECF No. 18), and 3) Plaintiff's counsel's email to the undersigned on August 4, 2025. Counsel for Defendant expressed to Plaintiff's counsel by email

on July 28, 2025, that the request for expedited processing was informally denied by the FBI. In response, Plaintiff's counsel reiterated his request for expedited processing by email to Defendant's counsel on August 4, 2025. The Parties differ on how to handle Plaintiff's recent, renewed request for expedited processing, stated separately in their position statements below.

## Defendant's Position

**Search, Processing, and Production of Records.**

Consistent with the Court's March 4, 2025, Minute Order, Defendant previously completed its search, located 44,947 pages of potentially responsive material, with an additional 2 days, 15 hours and 21 minutes of audio/video media. The FBI last made a release of documents in July 2025. While the Court has already approved the Defendant "producing at a rate of 250 pages per month until production is complete[,]" (Minute Order February 13, 2025), this production has been paused with the Court's permission. Minute Entry, April 2, 2025.

Since this pause in productions, the parties agreed on narrowing proposals to reduce the number of potentially responsive pages. This reduction would also reduce the number of pages that need to go through processing by the FBI.[1] Manual review is required for this narrowing for these legacy records because of the nature of the records themselves, their manner of storage, and the potential for redactions.[2] The current scope of the search parameters, as understood by the FBI, are as follows:

---

[1] Pursuant to the Court's Order that the parties confer regarding the production rate and possible narrowing of the FOIA requests to reduce the total processing time, (Minute Entries, April 2, 2025 & June 3, 2025), counsel for Plaintiff and Defendant met in person on June 10, 2025. They discussed the most recent narrowing proposal and made progress to narrow the scope of Plaintiff's requests.

[2] Importantly, searching the records under Plaintiff's latest proposal still requires the FBI to conduct a manual review; this is based on the nature of the records themselves, their manner of storage, and the potential for redactions. As a threshold issue, the files requested are legacy files,

- • 302s relating to Majid Khan for the locations of Pakistan (March 5, 2003, through end of April 2003), Afghanistan (from end of April 2003 through approximately April/May 2004), Afghanistan (from end of April 2004 through approximately September 2006), Guantanamo Bay Cuba (from September 2006 through January 2007), and any other 302s for April/May 2004 through the end of 2005, and any 302s from January 2007.

- • 302s concerning Majid Khan's family as of March 1, 2003, though May 2003, from the Baltimore Field Office.

- • Any recordings with Majid Khan.[3]

Using this scope for the manual review, the FBI has begun the manual review required to respond to additional inquiries from the Plaintiff.[4] To date, the FBI has identified approximately 820 pages of potentially responsive records. However, this manual review is not complete, and the FBI has not finalized the page count at this time. Additionally, the FBI cannot provide an updated estimate of the volume of audio and video records that is within the scope of the narrowed request as these require manual review in order to determine whether they are within the scope of the narrowed request. There are also audio and video materials which require manual review before a total volume can be provided to Plaintiff. The FBI anticipates that it will be able to

---

which limits the FBI's ability to scope the records using automated methods. The Central Record System (CRS) is the FBI's current record keeping system; CRS files are searched via Sentinel, the case management system. Files created after Sentinel was implemented in 2012 are a bit more automated, meaning the FBI can export certain document types (e.g. FD-1057s (ECs), FD-302s (interviews), etc.). Legacy files, in contrast, require a manual process to review and find document types.

[3] The FBI reserves the right to apply any applicable exemptions to the records located, including any records that may include information pertaining to third-party individuals that have not provided a privacy waiver permitting disclosure.

[4] Plaintiff's counsel responded on July 2, 2025, with three questions intended to help determine the viability of the above scoping and review proposal. Plaintiff's counsel asked Defendant's counsel to confirm whether the FBI's proposed date and location-based narrowing procedure is a reasonable way of identifying certain FBI records associated with specific locations, how many pages would be included in the manual review, and how much of the previously located audio/video media is responsive to Plaintiff's narrowed parameters. Counsel for Defendant shared these questions with the FBI that day, and the FBI is manually reviewing the records using the scope parameters identified to provide responses to Plaintiff.

provide an update on the total page count and its proposed production schedule, which will include review of all audio and video material. At the completion of this manual review, the FBI will begin to process the first batch of 250 pages of the rescoped records.

**Plaintiff's Renewed Request for Expedited Processing.**

Plaintiff's nine (9) FOIA requests sought expedited processing for a commercial reason—delivering "a book under contract for manuscript delivery in January 2026." ECF No. 11-2 at 3, 16, 29, 42, 55, 68, 80, 103, and 115. FBI denied these requests. The Complaint did not challenge Defendant's denial of the request for expedited processing. *See generally* ECF No. 1. Defendant's Motion to Modify the Court's February 13, 2025, Order and Memorandum in Support Thereof explained why expedited processing would be inappropriate here. ECF No. 11 at 7. When the Court granted this motion, the Court amended its prior order requiring that Defendant *produce* 250 pages per month to instead order that Defendant *process* 250 pages per month. Min. Order March 4, 2025.

Essentially, Plaintiff's informal request to renew his expedited processing request is a procedurally improper attempt to seek reconsideration of this Court's March 4, 2025, Minute Order setting a processing and production schedule in this matter. Plaintiff has not filed a motion to modify or a motion for reconsideration of the Court's processing and production Order, and he cannot seek this relief simply through a joint status report. This request for reconsideration is procedurally improper and substantively fails.

Furthermore, the FBI objects to Plaintiff's attempt to prematurely inject his informal renewed request for expedited processing as an issue in this District Court litigation. Plaintiff has not formally submitted a renewed request for expedited processing directly to the FBI, as he is required to do under the applicable FOIA regulations. *See* 28 CFR 16.5(e)(2) (providing that a

request for expedited processing based on an alleged urgency to inform the public about an actual or alleged Federal Government activity must be "submitted to the component that maintains the records requested."). He has also not provided the agency with the requisite "statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing." *See* 28 CFR 16.5(e)(3). Plaintiff has therefore not received a formal response from the FBI, to which he would be entitled under the applicable regulations within ten calendar days. *See* 28 CFR 16.5(e)(4). Having not yet received the Agency's response, Plaintiff has not (nor could he) filed an administrative appeal from any adverse decision. He has therefore not exhausted his administrative remedies with respect to any renewed request for expedited processing, and no claim arising from the denial of any such request could therefore be brought in an Amended or Supplemental Complaint in this case.

Should the Court nevertheless choose to consider Plaintiff's unexhausted, renewed request for expedited processing, which is not at issue in the Complaint in this matter, the FBI also opposes Plaintiff's attempt to seek modification of the processing and production schedule from the Court only through his statements in this joint status report. Federal Rule of Civil Procedure 7(b)(1) requires that "[a] request for a court order must be made by motion." A separately filed motion would allow the Court to see exactly what relief Plaintiff requests, the factual bases (if any) in support, and the legal argument(s) trying to justify this relief. A separately filed motion would also provide notice to Defendant so that it could appropriately prepare its response and address the merits.

FBI proposes that, if Plaintiff intends to move for leave to amend the Complaint to challenge any denial of a renewed request for expedited processing of his FOIA requests, or to seek modification of the processing and production schedule in this matter that the Court require

that Plaintiff file a motion seeking such relief. For a briefing schedule on such a motion, FBI proposes that Plaintiff be ordered to file his memorandum of law in support and any factual materials in support on the same day as his motion, that FBI be provided thirty (30) days to prepare its response, and that Plaintiff be given fourteen (14) days to file his reply.

Apart from the potential briefing schedule on Plaintiff's possible motion for leave to amend or motion to modify, the FBI respectfully requests that the Court allow the Parties to submit a further joint status report apprising the Court as to the status of the case in forty-five (45) days, on or before September 19, 2025.

<u>**Plaintiff's position is as follows:**</u>

**Resuming Productions**

In the six months since this court initially ordered monthly productions in this case, Defendant has made two productions. The court suspended productions in response to the Defendant's claim that Plaintiff's proposals for substantial reduction of the scope of records to be reviewed "would require automated system capabilities that the FBI does not have." (See ECF# 14).

Now that the parties have agreed on a narrowing search plan—largely resembling a proposal offered by Plaintiff in February, 2025—which is expected to conclude by the end of this month, the reason for the court's current suspension of the government's productions no longer applies. Therefore, Plaintiff respectfully suggests that the court end its suspension, causing resumption of productions at this time. We respectfully suggest that the next production can be due at the end of next month, September, 2025. A second month before the next production is appropriate in consideration of the FBI's previously-stated requirement of two full months to move each unit of records through its processing cycle. (Seidel Declaration,

ECF #11, Attachment 1).

### The Appropriate Rate of Processing

This court previously set the rate of productions in line with the Defendant's recommendation of a monthly "increment" of 250 pages of documents (or 15 minutes of audio recordings, or 7.5 minutes of video recordings) matching it's internal, non-published, interim production rate policy, which it explained had been temporarily cut by half in 2004 to meet an arbitrary department-wide administrative mandate issued during the Biden Administration that is due to expire on December 15, 2025. See ECF#11, p.4. Because the production rate was to be set at the court's sole discretion, the court gave Plaintiff's request and supporting arguments due consideration at the February 13, 2025 status conference, but ultimately noted that Plaintiff was not offering circumstances that would meet the FOIA's threshold for expedited processing under the FOIA, such that a departure from the FBI's standard policy rate was appropriate. Thus, the court used its discretion, based on the parties' status reports, to set the production rate to match the FBI's standard per-request production rate.

As a (since-departed) representative of the FBI RIDS office explained in his declaration in this case earlier this year, each FOIA request is treated similarly by the Bureau to other others with that are similarly situated, accounting for the size and complexity of requests because, when there has not been a grant of expedited processing, "processing at higher monthly rates of production delays the processing of requests for other requesters, including requests that predate Plaintiff s requests." (ECF #11, Attachment 1).[5] The FBI has reported that

---

[5] At the time Michael Seidel made his declaration to this court, the FBI's RIDS office was in the midst of multiple massive, voluntary records-review projects involving archives of records far larger than those at issue in this case. (See FBI Memo, July 2025, available at https://www.justice.gov/opa/media/1407001/). As far as Plaintiff's Counsel is aware, these efforts were not required by any statute including the FOIA. Nonetheless, according to the FBI, these "exhaustive" reviews occupied "[t]eams of agents, analysts, attorneys, and privacy and civil liberties experts," who

its average time to complete administrative FOIA requests that result in records productions is approximately one year. As of the time of this filing, the FBI has processed a total of some 500 pages in response to Plaintiff's eight requests at issue in this case in the fourteen months since they were submitted. Plaintiff respectfully submits that he has not been provided service equivalent to the FBI's standard practice, let alone the FOIA's strict mandate. One way the court can address this disparity is by recognizing that Plaintiff has eight FOIA requests at issue in this case (one request has been scoped out). Therefore, on this basis alone, a production rate of 2000 records per month is appropriate. Such a rate is not unprecedented.

In the last JSR, Plaintiff explained the reasons why he was requesting a grant of expedited treatment for this case from the FBI.[6] Specifically, among the records at issue in the present case are FBI interview records that, if released, would provide the public with highly valuable information about the FBI and other agencies' practices regarding a detainee who's circumstances are almost identical to those of the terror suspect who a tribunal recently ruled had been made unable to give a legitimate confession as a result of the treatment both detainees shared.[7] These cases do not merely bear similarities to one another. For example, both the FBI interview record that was invalidated by the Guantanamo tribunal this year and an FBI interview record at issue in this case were produced by the same FBI investigators, on the same day in January, 2007, at the Guantanamo Bay detention facility. It is easy to see how the

---

"combed through the digital and documentary evidence with the aim of providing as much information as possible to the public…" The arbitrary prioritization of these efforts by the Bureau and DOJ, undermine notions of the FBI's dedication to fair treatment of FOIA requesters.

[6] Defendant notes above that Plaintiff's request was made to it via counsel rather than by a letter directly between the parties. Defendant nonetheless treated Plaintiff's request as legitimate when Defendant's counsel replied that the request had been "denied." In any case, the DOJ's FOIA regulation provides that "[a] request for expedited processing may be made at any time" (28 CFR 16.5(e)(2)).

[7] All of the relevant facts of the Guantanamo Military Commissions tribunal's evidentiary ruling in the Al-Baluchi case were filed with the D.C. Circuit court by Defense Department attorneys on behalf in May of this year. See *Ammar Al-Baluchi v. Pete Hegseth*, 23-5251, (D.C. Cir. May 20, 2025) ECF No. 1208740984.

release of this and other records at issue in this case could shed further light—potentially to the benefit the prosecution as well as the defense—on serious allegations made against agents of the U.S. Government in that ongoing case. Expedition will prevent a significant reduction in the value of these records in relation to those proceedings incrementally as they continue toward and during trial. The court has recognized in earlier proceedings in this case that it has discretion to recognize circumstances supporting expedited processing in accordance with the FOIA when it sets the production rate in this case.

 Plaintiff is not making a motion at this time because none is necessary. As previously noted, as a matter of law and civil procedure, this court has broad discretion to set the rate of records to be processed in the way that balances the strict duties imposed by FOIA statute with the legitimate interests of the government in an orderly and diligent review process, and any other interests deemed appropriate. As the parties were instructed by the Court in its most recent order to report on the issue of expedited processing, the parties have now had the opportunity with this report to provide all the information needed to rule on the resumed production schedule including the rate of processing. Therefore the Plaintiff's position is that further briefings will not be necessary.

 In light of the above, Plaintiff respectfully proposes the court remove the current suspension of productions in this case and resume the production schedule. Plaintiff respectfully suggests that the court order productions at a rate of 2,000 pages reviewed per month, or two hours of audio recordings or one hour of video recordings (equivalent to its standard policy rates for the sum of the eight requests at issue in this case, and alternatively to prevent harm from delay intended to be prevented by the FOIA's expedited processing provision), with the first production due at the end of September, 2025.

\*    \*    \*

Jointly, because progress on Plaintiff's FOIA requests productively continues, the Parties do not currently propose a briefing schedule on Defendant's potential motion to dismiss or for summary judgment concerning whether the FOIA requests, as submitted to the FBI, adequately describe the records being sought or are unduly burdensome.

| | |
|---|---|
| Dated: August 5, 2025<br>Washington, DC<br><br>*/s/ Kerry S. Gutknecht*<br>Kerry S. Gutknecht, Esq.<br>1319 F St NW<br>Suite 301<br>Washington, DC 20004<br>202-798-1650<br>Email:Kerry@gutknechtlegal.com | Respectfully submitted,<br><br>JEANINE FERRIS PIRRO<br>United States Attorney<br><br>By:  */s/ Mason D. Bracken*<br>     Mason D. Bracken<br>     Assistant United States Attorney<br>     601 D Street, N.W.<br>     Washington, D.C. 20530<br>     Telephone: (202) 252-2550<br>     mason.bracken@usdoj.gov<br><br>*Attorneys for the United States of America* |